IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

FILED

SEP 14 2016

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | | |
|---|---|---|
| SCOT CARLEY, on behalf of himself and all others similarly situated, | § § § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | No. MO:15-CV-00161-DC |
| | § | |
| CREST PUMPING TECHNOLOGIES, L.L.C., | § § § | |
| *Defendant*. | § | |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

I.   **GENERAL INSTRUCTIONS**

You have heard the evidence in this case. It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of

the evidence that has been admitted and determine whether the evidence admitted in the trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiffs or the defendant in arriving at your verdict.

### A.   *Burden of Proof*

The parties in this case—Plaintiff Scot Carley, Plaintiff Brandon Brown, and Defendant Crest Pumping Technologies, L.L.C.—each have the burden of proving certain elements of their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that a party has failed to prove any element of their claim or defense by a preponderance of the evidence, then that party may not recover on that claim or prevail on that defense.

### B.   *Evidence*

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

2

### C.   *Witnesses*

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

### D.   *Demonstrative Evidence*

Certain exhibits have been shown to you for the purposes of illustration.  They are used by a party to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

### E.   *Bias*

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**F.**   *No Inference from Filing Suit*

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**II.   DEFINITIONS**

Throughout the remainder of these instructions, I refer to the following abbreviated terms, which are defined as follows:

1.   "Brown" refers to Plaintiff Brandon Brown.

2.   "Carley" refers to Plaintiff Scot Carley.

3.   "CDL" refers to commercial driver's license.

4.   "Crest" refers to Defendant Crest Pumping Technologies, L.L.C.

5.   "DOT" refers to the United States Department of Transportation.

6.   "Executive Exemption" refers to an FLSA overtime pay exemption asserted by Crest against Plaintiffs.

7.   "FLSA" refers to the Fair Labor Standards Act.

8.   "GCWR" refers to gross combined vehicle weight rating.

9.   "GVWR" refers to gross vehicle weight rating.

10.  "Highly-Compensated Employee Exemption" refers to an FLSA overtime pay exemption asserted by Crest against Plaintiffs.

11.  "MCA" refers to the Motor Carrier Act.

12.  "MCA Exemption" refers to the Motor Carrier Act exemption to the FLSA overtime pay provisions that Crest asserts against Plaintiffs.

13.  "TCA" refers to the SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110–244, 122 Stat. 1572.

### III.    STIPULATED FACTS

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.  The parties have agreed, or stipulated, that the following facts are not in dispute and will require no proof at trial.

1.    Crest is an enterprise engaged in commerce as defined by the FLSA.

2.    Crest is a "motor carrier" pursuant to 49 U.S.C. § 31501, *et seq*.

3.    Crest was the employer of Plaintiffs Carley and Brown pursuant to the FLSA during all time periods relevant to this lawsuit.

4.    Crest provides downhole cementing and pump down services to meet the expectations of operators for complex unconventional and conventional wells.

5.    Crest engages in the interstate transportation of oilfield equipment, chemicals, and dry cement.

6.    Crest is a motor carrier regulated by the DOT operating under USDOT Number 2264972, and has been a registered motor carrier since 2012.

7.    Crest maintains a yard in Sweetwater, Texas from which Carley and Brown were dispatched during their employment with Crest.

8.    Crest requires its cementers to have a CDL.

9.    Brown and Carley had CDLs while working as cementers for Crest.

10.    In their jobs at Crest, Brown and Carley drove motor vehicles in transportation on public highways in interstate or foreign commerce, carrying cementing tools and equipment to job sites and introducing goods into the flow of interstate commerce.

11.    In their jobs at Crest, Brown and Carley loaded and secured tools and equipment on Crest's motor vehicles for safe transport on the interstate highways of the country.

12.     Brown's and Carley's duties directly affected the safety of vehicles operating in interstate commerce.

13.     Brown had approximately 15 years of experience working in the cementing industry before he came to work for Crest, including prior cementer experience.

14.     Brown had knowledge of downhole procedures, understanding pressures and pumping rates, knowledge of turning solid into liquid, lift pressures, hydrostatic pressure, and all of the formulas a cementer needs to know to perform his job.

15.     A cementer and pump operator typically work together as part of the same crew.

16.     Dusty Tholl had been a pump operator on Brown's crew at another company prior to Brown's employment at Crest.

17.     Brown trained Dusty Tholl as a pump operator at their prior employer and referred to him as "my pump operator."

18.     The seven day workweek for overtime computation purposes is 12:00 A.M. Saturday to 11:59 P.M. Friday.

## IV.    LIABILITY UNDER THE FLSA

### A.    *Plaintiffs' FLSA Overtime Claims*

This case arises under the FLSA, the federal law that provides for the payment of minimum wages and overtime pay.  Plaintiff Carley and Plaintiff Brown (collectively, "Plaintiffs") claim that Crest did not pay Plaintiffs overtime pay required by the FLSA.

Crest denies Plaintiffs' claims and contends that Plaintiffs were not eligible for, and instead were exempt from, overtime under the FLSA.  Crest maintains it properly classified Plaintiffs as exempt from overtime under one or more of the following FLSA exemptions: (1) the MCA Exemption, (2) the Executive Exemption, and/or (3) the Highly-Compensated Employee Exemption.

It is unlawful for an employer to require an employee covered by the FLSA to work more than 40 hours in a workweek without paying overtime.

To succeed on their claims, Plaintiffs must each prove the following facts by a preponderance of the evidence:

(1)    Crest employed Plaintiffs during the time period involved in this lawsuit;

(2)    Crest had coverage under the FLSA; and

(3)    Crest failed to pay Plaintiff Scot Carley and/or Plaintiff Brandon Brown the overtime pay required by law.

With respect to the first element, the parties have stipulated or agreed that Crest employed Plaintiffs.  With respect to the second element, the parties have stipulated or agreed that the FLSA applies to Crest.  Thus, you are instructed that the first two elements are stipulated as fact and are not in dispute.  As a result, only the third element is in dispute.

With respect to the third element, Plaintiffs must prove by a preponderance of the evidence that Plaintiffs worked more than 40 hours during any of the 7-day workweeks in which they were employed at Crest as cementers, and that during such workweek(s), Crest failed to pay such Plaintiff(s) one and one-half times his regular rate of pay for the overtime hours he worked.

The FLSA requires that employees be paid for all hours worked.  "Work" is broadly defined as physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.

The FLSA requires an employer to pay an employee at least one-and-one-half times the employee's "regular rate" for time worked over 40 hours in a workweek.  A "workweek" is a regularly recurring period of seven days or 168 hours.  The phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business.  Such time constitutes "hours worked" if the employer knew or should have known that the work was being performed.  Work not requested but suffered or permitted is work time that must be compensated.  If the employer knows or has reason to believe that the employee is continuing to work then that time is working time.  If an employee works more than 40 hours in one workweek, the employer must pay the employee the overtime rate of 1.5 times the regular rate for the time he worked after the first 40 hours.  This is commonly known as "time-and-a-half pay" for overtime work.

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment.  This is true whether he works at a fixed location or at different job sites.  Normal travel from home to work is not worktime.  However, time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.  Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.  If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.  However, if the employee goes home instead of

8

returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

Periods during which an employee is completely relieved of duty that are long enough to enable the employee to use the time effectively for his own purposes are not hours worked. Whether the time an employee spends waiting to work counts towards "hours worked" depends on the totality of the circumstances. If you determine that Plaintiffs were engaged by Crest to wait, then the time they spent waiting should be included in the number of hours they worked. If, on the other hand, you determine that Plaintiffs were merely waiting to be engaged, then that wait time should not be included in the number of hours they worked. Such questions must be determined in accordance with common sense and the general concept of work.

In answering these questions, you are to follow all of the instructions I have given you in the Court's charge. As used herein, "Crest" means Defendant Crest Pumping Technologies, L.L.C, and "Plaintiffs" collectively refers to Plaintiff Scot Carley and Plaintiff Brandon Brown.

## QUESTION NO. 1

For each of the following Plaintiffs, has each Plaintiff proved that he worked more than 40 hours in any workweek but did not receive overtime compensation from Crest?

Instruction: Plaintiffs bear the burden of proof. If you find that Plaintiffs met their burden for any of the below Plaintiffs, answer "Yes" for such Plaintiff(s). If you find that Plaintiffs failed to meet their burden for any of the below Plaintiffs, answer "No" for such Plaintiff(s).

ANSWER FOR PLAINTIFF SCOT CARLEY:           _YES_

ANSWER FOR PLAINTIFF BRANDON BROWN:        _YES_

*Instruction: If you answer "No" for ALL Plaintiffs in Question No. 1, you do not need to answer any additional questions. If you answered "Yes" for any Plaintiff in Question No. 1, proceed to the next subsection of these instructions with respect to any Plaintiff for which you answered "Yes."*

**B.    *Crest's Executive Exemption***

Crest claims Plaintiffs are exempt from the FLSA's overtime provisions under the Executive Exemption.  Crest must prove facts by a preponderance of the evidence that show the Executive Exemption is plainly and unmistakably applicable to Plaintiffs.  For Crest to establish that the Executive Exemption applies to Plaintiffs, Crest must prove the following elements by a preponderance of the evidence:

(1)    That Plaintiffs were compensated on a salary basis at a rate of not less than $455 per week;

(2)    That Plaintiffs' primary duty was management of the enterprise in which they were employed or of a customarily recognized department or subdivision thereof;

(3)    That Plaintiffs customarily and regularly directed the work of two or more other employees; and

(4)    That Plaintiffs had the authority to hire or fire other employees or make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees, and that such suggestions and recommendations were given particular weight.

With respect to the first element of the Executive Exemption, the parties have stipulated that Plaintiffs were compensated on a salary basis at a rate of not less than $455 per week, so there is no issue for you to decide in that respect.

With respect to the second element of the Executive Exemption, the term "primary duty" means the main or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to: the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the

employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Generally, the term "management" includes, but is not limited to: activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and continuing function.

With respect to the third element of the Executive Exemption, the phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek but not isolated or one-time tasks.

The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. The supervision can be distributed among two, three or more employees, but each such

employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent.

With respect to the fourth element of the Executive Exemption, to determine whether an employee's suggestions and recommendations were given "particular weight," factors to consider include, but are not limited to: whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon.  Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs.  It does not include an occasional suggestion with regard to the change in status of a co-worker.  An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

## QUESTION NO. 2

Has Crest proved that each of the following Plaintiffs was exempt from the overtime-pay requirement as an executive employee?

> Instruction: Crest bears the burden of establishing the Executive Exemption. If you find Crest has met its burden for any of the below Plaintiffs, answer "Yes" for such Plaintiff(s). If you find that Crest failed to meet its burden for any of the below Plaintiffs, answer "No" for such Plaintiff(s).
>
> ANSWER FOR PLAINTIFF SCOT CARLEY:      _No_
>
> ANSWER FOR PLAINTIFF BRANDON BROWN:    _No_

*Instruction: If you answer "Yes," for ALL Plaintiffs in Question No. 2, you do not need to answer any additional questions. If you answered "No" for any Plaintiff in Question No. 2, proceed to the next subsection of these instructions with respect to any Plaintiff for which you answered "No."*

C.     *Crest's Highly-Compensated Employee Exemption*

Crest claims Plaintiffs are exempt from the FLSA's overtime provisions under the Highly-Compensated Employee Exemption. Crest must prove facts by a preponderance of the evidence that show the Highly-Compensated Employee Exemption is plainly and unmistakably applicable to Plaintiffs. For Crest to establish that the Highly-Compensated Employee Exemption applies to Plaintiffs, Crest must prove by a preponderance of the evidence that each of the Plaintiffs was an employee:

(1)     Who was compensated on a salary basis at a rate of not less than $455 per week;

(2)     Who earns total annual compensation of at least $100,000;

(3)     Who customarily and regularly performs any one of the exempt duties or responsibilities of an executive or administrative employee; and

(4)     Whose primary job duty includes performing office or non-manual work.

With respect to the first element of the Highly-Compensated Employee Exemption, the parties have stipulated that Plaintiffs were compensated on a salary basis at a rate of not less than $455 per week, so there is no issue for you to decide in that respect.

An employee who does not work a full year for the employer because the employee ends the employment before the end of the year, may qualify for exemption under this section if the employee receives a *pro rata* portion of the minimum amount $100,000 total annual compensation based on the time the employee has been employed. The calendar year applies compensation based on the time the employee has been employed. The calendar year applies for the purpose of this evaluation in the absence of any other designated 52-week period.

With respect to the second element of the Highly-Compensated Employee Exemption, total annual compensation may include salary, commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period. Nondiscretionary compensation includes bonuses paid pursuant to any prior contract, agreement, or promise. For example, any bonus

15

which is promised to employees upon hiring would be included from total compensation. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the total compensation. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the total compensation. Total annual compensation does not include board, lodging and other facilities, and does not include payments for medical insurance, payments for life insurance, contributions to retirement plans and the cost of other fringe benefits.

With respect to the third element of the Highly-Compensated Employee Exemption, the phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek but not isolated or one-time tasks.

Executive duties include management of a customarily recognized department or subdivision of the employing enterprise, the direct management of two or more employees, and control, or substantial influence, over the employment status of other employees.

An exempt administrative employee is an employee (1) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (2) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. The first primary duty, "directly related to the management or general business operations," means that the employee must perform work directly related to assisting with the running or servicing of the business. The second primary duty, "the exercise of discretion and independent judgment," means that the employee must have the authority to make an independent choice, free from immediate

16

direction or supervision. The work involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. Employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. However, the exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The term "matters of significance" refers to the level of importance or consequence of the work performed.

Administrative duties include leading a team of other employees assigned to complete major projects for the employer. Examples of administrative duties include: purchasing, selling, or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements. An employee may engage in administrative duties even if the employee does not have direct supervisory responsibility over the other employees on the team.

With respect to the fourth element of the Highly-Compensated Employee Exemption, the phrase "primary job duty" means the principal, main, major or most important duty that the employee performs. Determining an employee's primary duty usually requires a detailed analysis based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. The employee's primary duty will usually be what he does that is of principal value to the employer. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Although time alone is not the sole test, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. The amount of

time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

The Highly-Compensated Employee Exemption applies only to employees whose primary duty includes performing office or non-manual work. Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

## QUESTION NO. 3

Has Crest proved that each of the following Plaintiffs was exempt from the overtime-pay requirement as a highly-compensated employee?

<u>Instruction</u>: Crest bears the burden of establishing the Highly-Compensated Employee Exemption. If you find Crest has met its burden for any of the below Plaintiffs, answer "Yes" for such Plaintiff(s). If you find that Crest failed to meet its burden for any of the below Plaintiffs, answer "No" for such Plaintiff(s).

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:      *No*

*Instruction: If you answer "Yes," for ALL Plaintiffs in Question No. 3, you do not need to answer any additional questions. If you answered "No" for any Plaintiff in Question No. 3, proceed to the next subsection of these instructions with respect to any Plaintiff for which you answered "No."*

D.    *Crest's MCA Exemption*

Crest claims that Plaintiffs are exempt from the FLSA's overtime provisions under the MCA Exemption.  Crest must prove facts by a preponderance of the evidence that show the MCA Exemption is plainly and unmistakably applicable to Plaintiffs.  The MCA Exemption applies to employees who are subject to the rules of the DOT regarding the operation of commercial motor vehicles on public highways in interstate commerce.  To establish that Plaintiffs are exempt under the MCA Exemption, Crest must prove each of the following facts by a preponderance of the evidence:

(1)    Crest is a motor carrier subject to DOT jurisdiction; and

(2)    Plaintiffs engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce.

The Parties have stipulated that both of these criteria have been met so there is nothing for you to decide in this regard.

Notwithstanding the MCA Exemption, an employee will still be eligible for overtime pay if he is a "covered employee" under the TCA.  The TCA defines a "covered employee" as an individual:

(1)    who is employed by a motor carrier or motor private carrier;

(2)    whose work, in whole or in part, is defined;

(A)    as that of a driver, driver's helper, loader, or mechanic; and

(B)    as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce; and

(3)    who performs duties on motor vehicles weighing 10,000 pounds or less.

It is undisputed that Plaintiffs were employed by Crest, a motor carrier, and Plaintiffs' work as that of drivers affected the safety of operation of motor vehicles in transportation on public

highways in interstate or foreign commerce.  Therefore, the only thing you must decide is whether Plaintiffs exclusively performed work with vehicles weighing 10,001 pounds or more in each workweek during their employment with Crest.

The weight of a motor vehicle is determined by GVWR.  GVWR means the value specified by the manufacturer as the loaded weight of a single motor vehicle.  If the vehicle is pulling a trailer, the weight is determined by the GCWR.  GCWR can be determined by the sum of the GVWRs of the vehicle and the trailer.

To be exempt from the FLSA's overtime provisions, Crest must prove by a preponderance of the evidence that Plaintiffs exclusively performed work with vehicles weighing more than 10,000 pounds each workweek.  If part of an employee's work is done with vehicles weighing 10,000 pounds or less in a particular workweek, the employee is eligible for overtime pay during that workweek for any hours worked in excess of 40.

## QUESTION NO. 4

Has Crest proved that each of the following Plaintiffs exclusively performed work with vehicles weighing 10,001 pounds or more in each of the following workweeks?

<u>Instruction</u>: Crest bears the burden.  If you find Crest has met its burden for any of the below Plaintiffs in each workweek, answer "Yes" for such Plaintiff(s) in that workweek.  If you find that Crest failed to meet its burden for any of the below Plaintiffs in each workweek, answer "No" for such Plaintiff(s) in that workweek.

1) Workweek ending on 2/28/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


2) Workweek ending on 3/7/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


3) Workweek ending on 3/14/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


4) Workweek ending on 3/21/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


5) Workweek ending on 3/28/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:            *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*

6)  Workweek ending on 4/4/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

7)  Workweek ending on 4/11/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

8)  Workweek ending on 4/18/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

9)  Workweek ending on 4/25/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

10) Workweek ending on 5/2/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

11) Workweek ending on 5/9/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

12) Workweek ending on 5/16/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:                   _No_

ANSWER FOR PLAINTIFF BRANDON BROWN:           _No_

23

13) Workweek ending on 5/23/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:          *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


14) Workweek ending on 5/30/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:          *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


15) Workweek ending on 6/6/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:          *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


16) Workweek ending on 6/13/2014

ANSWER FOR PLAINTIFF SCOT CARLEY:          *No*

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


17) Workweek ending on 6/20/2014

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


18) Workweek ending on 6/27/2014

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


19) Workweek ending on 7/4/2014

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*


20) Workweek ending on 7/11/2014

ANSWER FOR PLAINTIFF BRANDON BROWN:        *No*

21) Workweek ending on 7/18/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

22) Workweek ending on 7/25/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

23) Workweek ending on 8/1/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

24) Workweek ending on 8/8/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

25) Workweek ending on 8/15/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

26) Workweek ending on 8/22/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

27) Workweek ending on 8/29/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

28) Workweek ending on 9/5/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

29) Workweek ending on 9/12/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

30) Workweek ending on 9/19/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____

31) Workweek ending on 9/26/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____N-O_____

32) Workweek ending on 10/3/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____NU_____

33) Workweek ending on 10/10/2014

ANSWER FOR PLAINTIFF BRANDON BROWN: _____WU_____

*Instruction: If you answer "Yes" for ALL Plaintiffs in every workweek in Question No. 4, you do not need to answer any additional questions. If you answered "No" for any Plaintiff in any workweek in Question No. 4, proceed to the next section of these instructions.*

## V.    DAMAGES

If you find that Crest violated the FLSA, then you must next determine certain issues related to the amount of any damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiffs have proved liability.

Under the FLSA, the Court may award Plaintiffs backpay for any overtime compensation they should have been paid by Crest. To aid in this determination, you must decide how many overtime hours, if any, Plaintiffs have shown they worked without receiving time-and-a-half compensation.

Generally, it is the Plaintiffs' burden to demonstrate by a preponderance of the evidence the amount and extent of unpaid overtime hours worked. The law requires an employer to keep records of how many hours its employees work and the amount they are paid. In this case, Plaintiff Scot Carley and Plaintiff Brandon Brown claim that Defendant Crest Pumping Technologies, L.L.C. failed to keep and maintain adequate records of their hours and pay. Plaintiffs also claim that Crest's failure to keep and maintain adequate records has made it difficult for Plaintiffs to prove the exact amount of their claims.

If you find that Crest failed to keep adequate time and pay records for Plaintiffs and that Plaintiffs performed work for which they should have been paid, Plaintiffs may recover a reasonable estimation of the amount of their damages. But to recover this amount, Plaintiff Scot Carley and Plaintiff Brandon Brown must each prove by a preponderance of the evidence a reasonable estimate of the amount and extent of the work for which he seeks pay. If you find such approximations to be reasonable, you must accept Plaintiffs' estimated hours, unless you find that Crest was able to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from Plaintiffs' evidence.

## QUESTION NO. 5

For the following Plaintiffs, what number of unpaid overtime hours, if any, do you find that

such Plaintiff worked on average during the workweeks in which he was employed by Crest?

> Instruction: Only answer this question with respect to those Plaintiffs you found in favor of on the issue of Crest's liability under the FLSA.  Your answer should be in average hours per workweek.
>
> ANSWER FOR PLAINTIFF SCOT CARLEY:          _40_
>
> ANSWER FOR PLAINTIFF BRANDON BROWN:       _40_

*Instruction: This completes the jury questions.  The jury foreperson should sign and date this verdict on the last page and return this Charge to the Court.*

## VI.    INSTRUCTIONS ON DELIBERATIONS

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

29

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.


SIGNED September 14th, 2016.


_____
DAVID COUNTS
UNITED STATES MAGISTRATE JUDGE

## VERDICT OF THE JURY

We, the jury, unanimously answered the foregoing questions in the manner indicated in this verdict form, and returned these answers to the Court as our verdict.

DATE _14 Sept 2016_

_____
FOREPERSON

31